■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES F. BUSH, Appellant. [905 NYS2d 699]—

Rose, J. Appeal from a judgment of the Supreme Court (Dowd, J.), rendered December 11, 2008 in Chenango County, upon a verdict convicting defendant of the crimes of burglary in the first degree (two counts), criminal use of a firearm in the first degree, attempted robbery in the first degree and criminal use of a firearm in the second degree.

Defendant was charged with acting in concert with a friend after driving him to the home of a known drug dealer (hereinafter the victim) and waiting outside while the friend kicked in the victim's front door and fired a sawed-off shotgun. The friend was then shot to death by the victim. Defendant did not deny taking the friend to the victim's home, but asserted that he believed that the friend planned only to buy drugs from the victim. The jury rejected this defense and convicted defendant, as an accomplice, of two counts of burglary in the first degree,

criminal use of a firearm in the first degree, attempted robbery in the first degree and criminal use of a firearm in the second degree. Supreme Court sentenced defendant to an aggregate prison term of 15 years followed by five years of postrelease supervision.

On appeal, defendant contends that the evidence was legally insufficient to support the inference that he was criminally liable for his friend's conduct. "The standard of review on a challenge for legal sufficiency is whether 'viewed in the light most favorable to the People, there exists a valid line of reasoning and permissible inferences from which a rational juror could conclude that each of the elements of the subject charges upon which defendant was convicted were established beyond a reasonable doubt' " (*People v Alteri*, 49 AD3d 918, 919 [2008], quoting *People v Richardson*, 28 AD3d 1002, 1004 [2006], *lv denied* 7 NY3d 817 [2006]). In defining accomplice liability, Penal Law § 20.00 provides that "[w]hen one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he [or she] solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct" (*see People v Flayhart*, 72 NY2d 737, 741 [1988]; *People v Daniels*, 24 AD3d 970, 971 [2005], *lv denied* 6 NY3d 811 [2006]). To support a conviction based on accomplice liability, the evidence must demonstrate that a defendant "share[d] the intent or purpose of the principal actor" (*People v Kaplan*, 76 NY2d 140, 144 [1990] [internal quotation marks and citations omitted]). Mental culpability, however, may be inferred from a defendant's conduct and from the surrounding circumstances (*see People v Valderrama*, 285 AD2d 902, 903 [2001], *lv denied* 97 NY2d 659 [2001]).

Here, the evidence supporting defendant's role as an accomplice included proof that he knew that the victim had been robbed on three prior occasions and might have as much as $100,000 at his home. Defendant telephoned the victim in the afternoon and learned that he would be home after 8:00 P.M. that evening. Defendant then picked up the friend and brought him to defendant's home, where defendant's neighbor testified that he saw defendant and the friend arrive at around 5:00 P.M. There was evidence that the friend and defendant fired defendant's shotgun, one of them sawed off the barrel and the friend changed his clothing by taking off a leather jacket and putting on a dark, hooded sweatshirt. The friend then put on a backpack containing items that could be used as burglary tools and that were similar to items found at defendant's residence, and the

two men left on defendant's motorcycle, taking back roads to the home of the victim where they arrived shortly after 9:30 P.M. Before entering the victim's home, the friend put a scarf over his face, donned white latex gloves and readied the gun. This evidence supports the inference that defendant was aware of the opportunity, planned the crime, armed his friend, had him practice firing the weapon at his own premises, dressed and equipped him for a home invasion, and delivered him to the scene. Viewing this evidence in the light most favorable to the People, a rational juror could find beyond a reasonable doubt that defendant acted with the state of mind required for the commission of the crimes of which he was convicted and intentionally aided the friend in engaging in that criminal conduct (*see People v Hatch-Green*, 20 AD3d 581, 583 [2005], *lv denied* 5 NY3d 828 [2005]; *People v Durham*, 248 AD2d 820, 821-822 [1998], *lv denied* 91 NY2d 972 [1998]).

Since a different verdict would not have been unreasonable, we also "must, like the trier of fact below, 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495 [1987], quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]; *accord People v Romero*, 7 NY3d 633, 645-646 [2006]). While defendant's counsel brought out some inconsistencies in the testimony of the People's witnesses and presented one witness who testified that someone had stolen defendant's shotgun, other evidence established that defendant and the friend were in possession of the shotgun and practiced with it just before going to the victim's home. Upon weighing the proof and according deference to the jury's credibility determinations, we are not persuaded that the verdict was against the weight of the evidence (*see People v Bleakley*, 69 NY2d at 495; *People v Glanda*, 5 AD3d 945, 949 [2004], *lvs denied* 3 NY3d 640, 674 [2004]; *People v Williams*, 284 AD2d 564, 568 [2001], *lv denied* 96 NY2d 909 [2001]; *People v Durham*, 248 AD2d at 822).

Defendant's remaining contentions are also unpersuasive. He was not denied a fair trial when one of the People's witnesses used a slang expression that may have suggested that defendant had previously been incarcerated. The witness's mention that defendant "was doing a bid" was inadvertent, fleeting and not likely to be understood by the jury. In any event, Supreme Court gave an immediate and appropriate curative instruction. Next, a mug shot photograph of defendant was briefly placed on a table containing other items in evidence near the jury box before defense counsel asked that it be turned over so that it could not

be seen. It was not circulated, however, and there is no indication that the jury actually saw it before the court eventually revoked its admission into evidence. Regarding the prosecutor's few comments during summation about points of law, defendant does not claim that they were inaccurate or misleading, but only that they usurped the court's role (*see People v Bryan*, 46 AD3d 1219, 1221 [2007], *lv denied* 10 NY3d 809 [2008]). Any impropriety, however, was alleviated by the court's own instructions to the jury (*see People v Barnes*, 80 NY2d 867, 868 [1992]). Defendant's further contention that he was entitled to an interested witness instruction concerning the victim's testimony is unpreserved by his failure to request it (*see People v Siler*, 288 AD2d 625, 628 [2001], *lv denied* 97 NY2d 709 [2002]).

Finally, the record provides no support for defendant's argument that the sentence was enhanced because he chose to proceed to trial rather than plead guilty. Given defendant's extensive criminal history and lack of remorse regarding his role in these violent crimes, the sentence imposed was not an abuse of Supreme Court's discretion and there are no extraordinary circumstances that would cause us to reduce it on the ground that it is harsh or excessive (*see People v Welch*, 71 AD3d 1329, 1332 [2010]; *People v Massey*, 45 AD3d 1044, 1048 [2007], *lv denied* 9 NY3d 1036 [2008]; *People v Ballard*, 38 AD3d 1001, 1004 [2007], *lv denied* 9 NY3d 840 [2007]; *People v Barnes*, 219 AD2d 527, 527-528 [1995], *lv denied* 87 NY2d 919 [1996]).

Cardona, P.J., Stein, McCarthy and Garry, JJ., concur. Ordered that the judgment is affirmed.